UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAY GOLDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03496-JMS-MJD |
| ) | |
| MATT MYERS, ) | |
| WOLFLA, ) | |
| TOOLE, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

For the reasons explained in this Order, the defendants' motion for summary judgment, dkt. [36], is **granted**.

**I. Background**

Plaintiff Jay Golden, at all times relevant to his complaint, was an inmate at the Bartholomew County Jail (the "Jail"). The allegations set forth in the amended complaint were summarized in the screening order of July 5, 2019:

> [U]pon [Mr. Golden's] entry into the Bartholomew County Jail, Officer Wolfla and Sergeant Toole patted him down and strip searched him. He was told that he was strip searched because of his past. He was the only one strip searched and he was placed back in isolation. He states that these acts took place because Matt Myers failed to properly train his staff. He also asserts that he believes 'my color played a role in the way that officers handled the booking.'

Dkt. 17 at 2. The Court permitted Mr. Golden's Fourth and Fourteenth Amendment claims to proceed against Officer Wolfla and Sergeant Toole, and his failure to train claim to proceed against Sheriff Matt Myers. *Id.*

The defendants' summary judgment motion is fully briefed and ripe for resolution.

## II. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder

could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

### III. Discussion

**A. Material Facts**

On October 23, 2018, Mr. Golden turned himself in at the Jail after he learned that a bench warrant had been issued by the Bartholomew Circuit Court for his arrest on October 19, 2018. Dkt. 38-1 at 5-6, 19. Mr. Golden's original charges involved two counts of dealing in methamphetamine, and the bench warrant was issued due to his violation of probation. *Id.* at 19. Mr. Golden violated the conditions of his probation because he tested positive for drugs in a test administered by his probation officer, and Mr. Golden pled guilty to positive test. *Id.* at 4. When Mr. Golden arrived at the Jail, he was taken to the booking area, patted down by Officer Wolfla, and put into a holding cell for approximately 35-40 minutes before he was moved to the classification unit, a "full block" of about 32 people. *Id.* at 6. From the holding cell, he was taken to a private bathroom to change

into the Jail uniform. *Id.* He was told he was going to be strip searched; Mr. Golden testified he "had no problem" being strip searched. *Id.* Mr. Golden described the strip search:

> They strip searched me, went through all the things. Lifted my arm up, my feet, bottom of my feet, looked in my mouth, threw my hair in my ears. Lifted my scrotum up, turned around. They asked for me to spread my cheeks. I bent over and spread my checks. Logan [Compton] had a flashlight shining into my rectum area. And Wolfla with his gloved hand reached around the rim of my anus and probed to see, I guess, if anything would protrude out. Nothing did. They told me to get dressed and put me back in the holding cell and sent me upstairs.

*Id.* Mr. Golden testified that this incident was the first time he had ever been strip searched at the Jail. *Id.* Only Officers Compton and Wolfla conducted the search, and no one else was present in the bathroom where the search was conducted. *Id.* at 6-7. Mr. Golden did not recall what the officers said to him during the search or if he said anything to the officers. *Id.*

Mr. Golden stated for the first time in his deposition testimony that Officer Wolfla touched him around the rim of his anus, that the touching lasted just a matter of seconds, was "just like a poke . . . to see if anything would protrude out," and that he was not physically injured. *Id.* Mr. Golden stated that he did not think Officer Wolfla was trying to hurt him but "just, in my mind, think he thought that I had something. And I think he went a little too far trying to find out." *Id.* Mr. Golden denied being touched in any other manner or by any other person. *Id.* He stated that Officer Wolfla touched him by poking outside the anus area but that the touching did not involve penetration. *Id.* at 9.

When Mr. Golden was placed into general population at the Jail, he was told by another inmate that the search he had been subjected to was illegal and that he should file a lawsuit. *Id.* at 11. On November 5, 2018, Mr. Golden filed a grievance with the Jail: "On or about 10-24-18 I was unconstitutionally stripped searched when I came into the Jail without reasonable or probable cause. Strip searching is illegal and a violation of my 14th Amendment." *Id.* at 30. Mr. Golden

4

received a response to his grievance two days later that stated the strip search did follow Jail policy. *Id.* Mr. Golden filed his original complaint on November 9, 2018, and he alleged that he was strip searched by Officer Wolfla without probable cause, but he did not allege that Officer Wolfla touched him. *Id.* at 21-24. On April 13, 2020, Mr. Golden filed his amended complaint and alleged that he was told to take off his clothes, was made to lift his testicles and spread his buttocks, and that a flashlight was shined on his anus. *Id.* at 25-29. Again, Mr. Golden made no mention of allegations of inappropriate touching. *Id.* Mr. Golden testified that he did not raise this issue earlier because he thought when his grievance was reviewed someone would come speak with him and he could provide this additional information. *Id.* at 9-11. He stated did not know how to write a complaint, and he thought the allegations he referred to in his filings covered all of his claims. *Id.* He testified that prior to his receipt of the Jail inmate handbook, he thought that touching was permitted in a search, but he learned that touching—in particular, touching of the anus was not permitted as part of the search. *Id.*

Mr. Golden testified that he believed that he was singled out for the strip search because of his race but admitted he had no further evidence besides his personal feelings about it. *Id.* at 11-12. He admitted that he did not know anything about the training Sheriff Myers provided to Jail staff regarding strip searches, that the Sheriff was not involved in his strip search, and that he never discussed the situation with the Sheriff afterwards. *Id.* at 11. Regarding the claims against Officer Toole, Mr. Golden admitted that he named the officer in error and was willing to dismiss him as a defendant from this action. *Id.* at 8.

### B. Claims Against Sgt. Toole

In his deposition and in his response to the defendants' motion for summary judgment, Mr. Golden agrees that Sgt. Toole should be dismissed from this action because Mr. Golden named

5

him by mistake. *Id.*; dkt. 40 at 1. Mr. Golden acknowledged that Sgt. Toole was not present during the strip search and had no involvement in the incident or allegations in Mr. Golden's complaint. Dkt. 38-1 at 8. Accordingly, Sgt. Toole is entitled to summary judgment on all claims alleged against him in this action.

The Court notes that in his response, Mr. Golden seeks to add Officer Logan Compton, the second officer who was present during the strip search and whom he alleges used a flashlight to conduct the search, to this action. Dkt. 40 at 1. However, "a party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." *See Colbert v. City of Chi.*, 851 F.3d 649, 656 (7th Cir. 2017) (internal quotation omitted). In addition, any attempt to amend would be untimely. Mr. Golden filed his original complaint more than two years ago and amended his complaint in 2019. Dkt. 1; dkt. 16. The September 13, 2019 pretrial schedule gave Mr. Golden an opportunity to amend the pleadings by December 3, 2019. *See* dkt. 29 at 3. Mr. Golden failed to take any of these opportunities to add Officer Logan Compton to this action, and he cannot do so now by argument in opposition to summary judgment.

### C. Analysis

#### 1. Fourth Amendment Claim Against Officer Wolfla

The Seventh Circuit has held that "the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020). The right to bodily privacy "pertains to pretrial detainees and convicted prisoners alike." *Id.* To evaluate a prisoner's Fourth Amendment claim "regarding a strip or body cavity search, courts must assess that search for its reasonableness, considering 'the scope of the particular

intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). In *Bell*, the Supreme Court acknowledged that the "[s]muggling of money, drugs, weapons, and other contraband is all too common an occurrence. And inmate attempts to secrete these items into the facility by concealing them in body cavities are documented in this record . . . and in other cases." *Id.* at 559 (inmates were required to expose their body cavities for visual inspections in strip searches after contact visits with persons outside the facility).

Strip searches like that experienced by Mr. Golden do not require probable cause or even the lesser standard of reasonable suspicion. *See, e.g., Bell*, 441 U.S. at 560 (concluding that visual body-cavity inspections can be conducted on less than probable cause.). "Correctional officials have a significant interest in conducting a thorough search as a standard part of the intake process. The admission of new inmates creates risks for staff, the existing detainee population, and the new detainees themselves." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318 (2012) (petitioner's proposal that new detainees "not arrested for serious crimes or for offenses involving weapons or drugs may be exempt from invasive searches" unless there is "reason to suspect them of hiding contraband—is unworkable"). Moreover, in this case, the Court finds that Mr. Golden's circumstances did provide "reason to suspect" the potential of hiding contraband because he had violated his probation due to testing positive for drugs, and his underlying criminal offense involved two counts of dealing methamphetamine.

The defendants argue that Mr. "Golden's strip search was not unconstitutional for the want of probable cause or reasonable suspicion," and the Court agrees. Therefore, the Court will turn its analysis to Mr. Golden's allegations regarding the details of the search, the use of a flashlight, and his new allegations of inappropriate touching during the search.

Strip searches may consist of requiring the inmate "to raise arms, to display foot insteps, to expose the back of the ears, to move and spread the buttocks or genital areas, or to cough in a squatting position." *Florence*, 566 U.S. at 325. Mr. Golden's amended complaint and testimony indicate that he followed similar instructions and took off his own clothing and manipulated his own body accordingly to comply with the instructions given to him by the officers during search. Dkt. 16 at 3. Mr. Golden testified that Officer Compton who was not named in this action, *not* Officer Wolfla, used a flashlight to illuminate his anal region during the search but did not touch him. Dkt. 38-1 at 13. He makes no allegations that Officer Compton used the flashlight for any purpose other than to shine light on the area of his body being visually inspected. Mr. Golden contends that the use of the flashlight violated Jail policy on searches. Dkt. 40 at 3. However, Mr. Golden provides no case law to support that the use of the flashlight to provide visibility during a search is unconstitutional. The Court notes that the defendants' state their "legal research has not revealed any cases in the Seventh Circuit or elsewhere suggesting that a flashlight cannot be used to facilitate the inspection of a person's anus or genitalia as part of a strip search performed in accordance with *Bell* and *Florence*." Dkt. 37 at 14. Without more, the Court does not find that the use of a flashlight to aid in the officers' conduction of a strip search is unreasonable.

Moreover, the Court does not find the elements of the search were unreasonable. As previously discussed, there was a penological justification for the strip search as a part of the booking process at the Jail to prevent the smuggling of contraband. Given Mr. Golden's underlying charges and the circumstances of his violation of probation, it was reasonable for the Jail to conduct the strip search. Mr. Golden was required to comply with instructions typical of strip searches. He was taken to a private bathroom, outside the presence of other officers or inmates, in order for the

search to be completed by two male officers. There is no indication that the search lasted for a prolonged period of time.

In addition, for the purposes of resolving this motion for summary judgment, the Court accepts as true Mr. Golden's testimony that Officer Wolfla "with his gloved hand reached around the rim of [Mr. Golden's] anus and probed," an act which he argues violated his constitutional rights. Dkt. 38-1 at 6. While this allegation was not present in his grievance to the Jail, his original complaint, or his amended complaint, it was timely disclosed during discovery. Mr. Golden testified at his deposition that Officer Wolfla touched but did not penetrate his anus during the search. Mr. Golden stated the touching was only a matter of seconds and that he believed that Officer Wolfla thought he had "something" on him. *Id.* at 7.

Even in the light most favorable to Mr. Golden, this instance of unwanted touching did not rise to a constitutional violation. The minimal touching during the course of searching for potential contraband was not unreasonable. It was not done to humiliate Mr. Golden or to gratify the defendant's sexual needs. There is no evidence that it was done to harm Mr. Golden, and he suffered no pain or injury. [1] Accordingly, Mr. Golden's allegations do not rise to the level of a constitution violation. *See, e.g., Brown v. Polk County, Wis.*, 965 F.3d 534 (7th Cir. 2020) (body cavity search was conducted with reasonable suspicion and by a medical professional in accordance with written policy, there was no constitutional violation of the Fourth Amendment

---

[1] The Court notes that Mr. Golden has not alleged that he has experienced any physical harm as a result of this incident. *See* dkt. 40 at 3. The Prison Litigation Reform Act precludes a claim for compensatory damages because Mr. Golden did not suffer a physical injury. *See* 42 U.S.C. § 1997e(e). Punitive damages would not be precluded. *See Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003). But Mr. Golden's claim does not show a constitutional violation much less evidence that Officer Wolfla acted with "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others" to establish that punitive damages could be awarded. *Id*. at 942 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

where female plaintiff was subjected to a naked visual inspection and physical contact of prying open her vagina and anus); *see also Lewis v. Stephen*, 2016 WL 6638029 (W.D. Wis. Nov. 9, 2016) (Even though court assumed defendant touched plaintiff's anus with his finger in a manner inconsistent with the "bladed hands" technique, the plaintiff confirmed he was not digitally penetrated. The court stated that Lewis' "search involved *some* touching, [but] no court has held that slight unwanted touching during a strip search amounts to a bodily intrusion for the purposes of the Fourth Amendment."); *Smith v. Turner*, 834 F. App'x 261, 263 (7th Cir. 2021) (holding that instances of unwanted touching during the course of a search did not rise to a Fourteenth Amendment violation); *Cf. Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (reversing summary judgment where prison guard spent five to seven seconds gratuitously fondling the prisoner through his clothing and then during a strip search fondled his nude testicles for two or three seconds).

For the reasons discussed above, Officer Wolfla is entitled to summary judgment as a matter of law on Mr. Golden's Fourth Amendment claims.

### 2. Fourteenth Amendment Claim Against Officer Wolfla

Mr. Golden testified that because of his race, he "just felt like" he had been "singled out" to be strip searched. Dkt. 38-1 at 12. He admitted in his deposition that he had nothing other than his own personal feelings that caused him to have this belief. *Id.* He claimed that he had a list of other inmates who were booked that day and that he believed that no one else being booked was of his race; however, he did not know if any of these persons were strip searched. *Id.* In his response, he references but does not include with his brief, the booking list that was provided by the defendants to show that he was the only person of color that was strip searched that day but does not explain how this booking list is evidence to support his Fourteenth Amendment claim.

Dkt. 40 at 2. The defendants stated that this document "does not include any information about who was and who was not strip searched." Dkt. 41 at 3.

In order for Mr. Golden to establish that his Fourteenth Amendment rights were violated, he "must show that he was a member of a protected class and that he was treated differently from a similarly situated member of an unprotected class." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001)). But Mr. Golden has not identified any individual of another race who was similarly situated and received different treatment with respect to the strip search during the booking process. His mere speculation that he was treated differently does not provide sufficient evidence to survive summary judgment on this claim. Because Mr. Golden has failed to present any evidence to support an equal protection claim against Officer Wolfla, the defendant is entitled to summary judgment on this claim.

### 3. Failure to Train Claim Against Sheriff Myers

The defendants seek summary judgment on the failure to train claim against Sheriff Myers because Mr. "Golden admits that he knows nothing about the training the Sheriff has given his jail staff and has no evidence to support his failure to train claim." Dkt. 37 at 2; *see also* dkt. 38-1 at 11 (Golden deposition admitting no knowledge of training with respect to strip searches). Further, Mr. Golden testified that Sheriff Myers was not present during the strip search and that he never discussed his claims with the Sheriff. *Id.*

Supervisors may be liable under 42 U.S.C. § 1983 for a failure to train in limited circumstances. The plaintiff must show that the defendant knew that his failure to train was likely to lead to constitutional violations. *Kitzman-Kelley v. Warner*, 203 F.3d 454, 459 (7th Cir. 2000).

Ultimately, a plaintiff must show that the official knew that his training was inadequate to handle a particular situation and that a constitutional violation was likely without improvements. *Id.*

Mr. Golden's response lists his evidence to support the failure to train claim as the Jail's policies on searches, including visual and body cavity search guidelines. Dkt. 40 at 2. Mr. Golden cites to specific pages of these policies but does not further explain or develop his arguments to show how the polices are evidence of Sheriff Myers' failure to adequately train officers in conducting searches at the Jail. *Id.* He vaguely states that according to the guidelines, visual strip searches are not to include inspection of the anus or vagina, and if a body cavity search was to be conducted, it must be pursuant to a warrant and conducted by a medical professional. *Id.* The defendants construe Mr. Golden's argument to be that "because the search to which he was subjected did not comport with the Sheriff's written policy," his claim survives summary judgment. Dkt. 41 at 1-2.

Even if officers failed to comply with the Jail's policies regarding the search during the booking process, this fact by itself is insufficient to establish a constitutional violation. "Section 1983 protects against 'constitutional violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

As the Court previously discussed, it has found no constitutional violation arising from the strip search conducted by the officers. Thus, Mr. Golden fails to show that Sheriff Myers violated his constitutional rights and has therefore failed to support his failure to train claim. Accordingly, Sheriff Myers is entitled to summary judgment.

## IV. Conclusion

For these reasons, the defendants' motion for summary judgment, dkt. [36], is **granted**.

Final judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 3/16/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


Distribution:

JAY GOLDEN
970083
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

Pamela G. Schneeman
STEPHENSON MOROW & SEMLER
pschneeman@stephlaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com